UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**SCOTTSDALE INSURANCE COMPANY**                       **PLAINTIFF**

vs.                                        **CIVIL ACTION NO. 3:20-CV-156-CRS**

**GOOD KARMA HOLDINGS LLC,**
**ALLTRADE SERVICE SOLUTIONS, LLC,**
**YENANNE HERNANDEZ,**
**SCHNEKI BURBRIDGE-GALBREATH,**
**MARIO ALFONSO and D.H.,**
A minor, by his next friend and parent,
**YENANNE HERNANDEZ**                                **DEFENDANTS**

## MEMORANDUM OPINION

This mater is before the Court on Plaintiff, Scottsdale Insurance Company's ("Scottsdale"), motion for judgment on the pleadings. DN 20, 21. Defendant, Good Karma Holdings LLC ("Good Karma Holdings"), filed a response to Scottsdale's motion. DN 24. Defendant, Alltrade Service Solutions, LLC ("Alltrade"), filed a response to Scottsdale's motion, which adopted and incorporated by reference the response of Good Karma Holdings. DN 26. Scottsdale filed a reply to each of the responses. DN 27, 28. The other Defendants did not respond to Scottsdale's motion. The matter is now ripe for review.

For the reasons stated herein, Scottsdale's motion for judgment on the pleadings will be granted.

## I. BACKGROUND

On May 29, 2019, Yenanne Hernandez and Shneki Burbridge-Galbreath filed a lawsuit in Jefferson County Circuit Court ("Underlying Action") against Good Karma Holdings and Alltrade. DN 21-1. An Amended Complaint was filed on February 3, 2020, which is materially identical to

the original Complaint except for the addition of two plaintiffs. DN 1-2. According to the Amended Complaint, Yenanne Hernandez, Sheneki Burbridge-Galbreath, Mario Alfonso, and D.H. (collectively, the "Claimants") were "resident/tenant/lessee/visitor" of units within a property located at 1400 Central Avenue in Louisville, Kentucky (the "Property"). DN 1-2 at 3, 21-1 at 4. The Property was owned by Good Karma Holdings and Alltrade acted as the property management company. DN 1-2 at 3. The Claimants allege that Good Karma Holdings and Alltrade breached the implied warranty of habitability by "fail[ing] to construct, remodel and/or maintain the [Property] in a habitable condition . . . such that the fungus *Histoplasma capsulatum* was present in the [Claimants'] apartments" and that the "fungus caused the [Claimants] to contract Histoplasmosis, an infection triggered by breathing in spores of a fungus found in bird and bat droppings—the result of the apartments being in an unlivable, uninhabitable and unsafe condition." DN 1-2 at 3-4. The Claimants also allege a cause of action for negligence, contending that Good Karma Holdings and Alltrade owed them a duty to "maintain, remodel and/or construct the [Property] in such a manner as to prevent injury and/or illness and provide tenants with safe, healthy, and comfortable use of the residences," that Good Karma Holdings and Alltrade "breached the duty to maintain, remodel and/or construct the [Property] in such a manner so as to provide safe and habitable housing," and "as a direct and proximate result of the breach, [Claimants] sustained bodily injuries, incurred medical expenses, lost wages, and suffered [] mentally." DN 1-2 at 4-5.

On, February 28, 2020, Scottsdale filed this lawsuit seeking a judicial declaration regarding its rights and obligations under a commercial general liability insurance policy ("Policy") issued to Good Karma Holdings as the named insured, and Alltrade as an additional insured. DN 1 at 1, 4. The Policy's insuring agreement for "bodily injuries" states that:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

DN 1-1 at 13. "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." DN 1-1 at 25. Damages because of "bodily injury" include "damages claimed by any person or organization for care, loss of services or death resulting at any time from the bodily injury." DN 1-1 at 13. An "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." DN 1-1 at 27.

The Policy also provides coverage for "personal and advertising injury liability." DN 1-1 at 18. "Personal and advertising injury" is defined as an "injury, including consequential bodily injury, arising out of one or more of the following offenses: (a) false arrest, detention, or imprisonment; (b) malicious prosecution; (c) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy . . . committed by or on behalf of [the premises] owner, landlord or lessor; (d) oral or written [defamatory] publication; (e) oral or written publication [that] violates a person's right of privacy; (f) use of another's advertising idea in your advertisement; or (g) infringing upon another's copyright, trade dress, or slogan in your advertisement." DN 1-1 at 27. The only difference between the insuring agreement outlining this coverage and that for "bodily injury" is that the words "personal and advertising injury" are substituted for "bodily injury." DN 1-1 at 18.

Following the coverage provisions, the Policy details a "Fungi or Bacteria Exclusion" for both "bodily injuries" and "personal and advertising injuries." DN 1-1 at 34. At the top of the relevant page, the Policy states that "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." DN 1-1 at 34. The Endorsement for Coverage A's "Bodily Injury and Property Damage Liability" section states the following[1]:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> **Fungi or Bacteria**
>
> a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

DN 1-1 at 34. However, the "exclusion [for bodily injury or property damage] does not apply to any fungi or bacteria that are, are on, or are contained in a good or product intended for bodily consumption." DN 1-1 at 34. The Policy defines the word "fungi" to mean "any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents, or byproducts produced or released by fungi." DN 1-1 at 34.

## II. LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings requires the same standard of review "employed for a motion to dismiss under Rule 12(b)(6)."

---

[1] The only difference under Coverage B's "Personal And Advertising Injury Liability" section is that the words "personal and advertising injury which would not have taken place" are substituted at the beginning of the exclusion for "bodily injury or property damage which would not have occurred." DN 1-1 at 34.

4

*Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). Under such a motion, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). However, we "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. at 581-82 (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)). To state a valid claim, "a complaint must contain direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005), cert. denied, 547 U.S. 1111 (2006). "A motion brought pursuant to Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Tucker*, 539 F.3d at 549 (quoting *Winget*, 510 F.3d at 582).

### III. <u>ANALYSIS</u>

#### A. Action is Appropriate for Declaratory Relief

This matter is before the Court for consideration of Scottsdale's motion for judgment on the pleadings in this declaratory action. Scottsdale contends that there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000 excluding interest and costs, satisfying the requirement that independent subject matter jurisdiction exists for this court to "declare the rights and other legal relations of the parties." 28 U.S.C. § 2201(a); *Brotherhood Mut. Ins. Co. v. United Apostolic Lighthouse, Inc.*, 200 F.Supp.2d 689, 691 (E.D. Ky. 2002). Scottsdale is a corporation organized under the laws of Ohio with its principal place of business in Arizona. DN 1 at 2. Good Karma Holdings and Alltrade are Kentucky Limited Liability Companies, whose members are all citizens of Kentucky. DN 1 at 2. Yenanne Hernandez,

Sheneki Burbridge-Galbreath, Mario Alfonso, and D.H. are also citizens of Kentucky. DN 1 at 2-3. The Defendants do not challenge the assertion of subject matter jurisdiction.

Upon a finding of proper subject matter jurisdiction, the Court must determine, in its discretion, whether the case is an appropriate one for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. The principal considerations in making this determination are (1) whether the judgment would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for purposes of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *Am. Home Assurance Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986) (citing *Grand Trunk Western R.R. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)).

A declaration of "no coverage" would clearly settle the dispute as between Scottsdale, Good Karma Holdings, and Alltrade. So, too, would a finding in favor of Good Karma Holdings or Alltrade that one or more of the claims in the Underlying Action might come within the coverage of the policy because Scottsdale's duty to defend would be clear. *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.,* 814 S.W.2d 273, 279 (Ky. 1991); *see Travelers Property Cas. Co. of America v. Hillerich & Bradsby Co., Inc.*, 598 F.3d 257, 272-73 (6th Cir. 2010) (the duty to defend applies to all claims, once the duty is triggered). Therefore, this action serves a useful purpose in clarifying the legal relations between the insurer (i.e., Scottsdale) and the insured parties (i.e., Good Karma Holdings and Alltrade).

There is no question of "procedural fencing here" or a "race for res judicata." Scottsdale simply wishes to know whether it owes a duty to defend or indemnify Good Karma Holdings and Alltrade.

There are no novel questions of state law raised in this declaratory action. There is sufficient case law from which we can readily discern the principles upon which our analysis must be based, as well as the policy considerations underlying those court decisions. The issues of coverage are also not dependent upon any resolution of facts in the Underlying Action. Further, there is no alternative to this declaratory action which is superior to the declaratory judgment process.

Having found that the *Grand Trunk Western Railroad* factors weigh in favor of Scottsdale's request for declaratory judgment, we proceed to consider its motion for judgment on the pleadings.

### B. Duty to Defend

Scottsdale claims that it has "no duty to defend . . . [Good Karma Holdings] or [Alltrade] in connection with the [Underlying Action]." DN 1 at 2. Specifically, Scottsdale alleges that it has no duty because "the Policy's Fungi or Bacteria Exclusion Endorsement precludes all coverage for Good Karma Holdings [since] all damages sought by Hernandez, Galbreath, Alfonso, and D.H. arise out of their alleged exposure to, contact with, and/or inhalation of the fungus *Histoplasma capsulatum* in their respective apartments." DN 1 at 7, 8. Scottsdale also alleges that it does not have a duty to defend because "[b]reach of warranty is not listed as an enumerated offense under the Policy's definition of "personal and advertising injury," and "a breach of warranty claim does not trigger coverage under Coverage A, as a breach of contract or warranty does not constitute an "occurrence," i.e., an accident." DN 1 at 7, 8.

On the other hand, Good Karma Holdings and Alltrade contend that Scottsdale's motion for judgment on the pleadings should not be granted because they denied certain factual allegations, along with their assertion of the affirmative defenses of waiver, estoppel and Scottsdale's failure to abide by the terms of the policy. DN 24 at 3-4. Good Karma Holdings and Alltrade also argue that Scottsdale has a duty to defend under Kentucky law because the Policy's exclusion should be narrowly construed in their favor and that it would be premature for this Court to rule on Scottsdale's motion since an expert in the Underlying Action has opined that the Claimants' injuries "were not caused by their inhalation of spores of fungi found in bird and bat droppings." DN 24 at 4-5.

In order to determine the scope of coverage, we must interpret the language of the Policy and the exclusions within it. As this is a diversity of citizenship case, we apply Kentucky law. Under Kentucky law, the interpretation and construction of an insurance contract is a matter of law for the court. *Morganfield National Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992).

"To ascertain the construction of an insurance contract, one begins with the text of the policy itself." *Pryor v. Colony Ins.*, 414 S.W.3d 424, 430 (Ky. Ct. App. 2013). "The words employed in insurance policies, if clear and unambiguous, should be given their plain and ordinary meaning." *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131 (Ky. 1999). "[T]he terms should be interpreted in light of the usage and understanding of the average person" unless they have acquired a technical meaning. *Stone v. Ky. Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 811 (Ky. Ct. App. 2000) (citing *Fryman v. Pilot Life Ins. Co.,* 704 S.W.2d 205, 206 (Ky. 1986)). Where the terms "are clear and unambiguous, the policy will be enforced as written." *Kemper Nat. Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2002); *see American National Bank and*

*Trust Company v. Hartford Accident and Indemnity Company,* 442 F.2d 995, 999 (6th Cir. 1971) ("While . . . we are to construe ambiguous language in an insurance contract favorably to the insured, under Kentucky law unambiguous and clearly drafted exclusions which are not unreasonable are enforceable"). "An insurance policy is ambiguous only when the provision to be construed is reasonably susceptible of more than one meaning." *Foster v. Ky. Hous. Corp.*, 850 F.Supp. 558, 561 (E.D. Ky. 1994).

The duty to defend is broader than the duty to indemnify. *James Graham Brown Found.*, 814 S.W.2d at 280. "An insurance company must defend its insured if the underlying allegations 'potentially' or 'possibly' bring the action within the scope of the insurance contract" regardless of the merits of the action. *Associated Indus. of Ky., Inc. v. U.S. Liab. Ins. Grp.*, 531 F.3d 462, 465 (6th Cir. 2008) (citing *James Graham Brown Found.*, 814 S.W.2d at 279). "The fact that the insurer has a duty to defend 'based on allegations in the complaint, even if the allegations are groundless, false or fraudulent,' does not mean that any allegations will do because [courts] are not to address whether the claims are potential meritorious." *Liberty Mut. Ins. Co. v. Estate of Bobzien by & through Hart*, 377 F. Supp. 3d 723, 745 (W.D. Ky. 2019), aff'd sub nom. *Liberty Mut. Ins. Co. v. Estate of Bobzien*, 798 F. App'x 930 (6th Cir. 2020). If we were to read the insurer's duty in this way it "would require insurers to always provide a defense." *Id*. Rather, the duty to defend only applies "when the allegations of the complaint allege an occurrence for which there is potential coverage." *Id*.

Scottsdale has no duty to defend if explicit coverage exclusions abrogate any potential coverage. *Lenning v. Commercial Union Ins. Co*., 260 F.3d 574, 581 (6th Cir. 2001). "[E]xclusion clauses do not grant coverage; rather, they subtract from it." *Kemper Nat. Ins. Cos*., 82 S.W.3d at 872 (internal citation and quotation marks omitted). "Because coverage exclusions are contrary to

9

the fundamental protective purpose of insurance, they are strictly construed against the insurer and will not be extended beyond their clear and unequivocal meaning. *Id*. at 873 (internal citation and quotation marks omitted).

Exclusions in an insurance policy must be clearly stated, carefully expressed, and their operative terms clearly defined. *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.,* 870 S.W.2d 223, 227 (Ky. 1994). The general rule in Kentucky is that "an insurer has no duty to defend a claim when it clearly falls within an exclusion." *Century Sur. Co. v. Ken Bar, LLC,* No. 5:07-CV-70-R, 2009 WL 2602809, at *5 (W.D. Ky. Aug. 24, 2009), as amended (Dec. 8, 2009), amended, No. 5:07-CV-70, 2009 WL 4663901 (W.D. Ky. Dec. 8, 2009). If any single exclusion applies, "there should be no coverage, regardless of inferences that might be argued based on exceptions or qualifications contained in other exclusions." *Kemper Nat. Ins. Cos.*, 82 S.W.3d at 874.

Here, the determination of Scottsdale's duty to defend depends on the Policy's provisions and the pleadings in the Underlying Action. In the Claimants' Amended Complaint, they allege that Good Karma Holdings and Alltrade breached the implied warranty of habitability by "fail[ing] to construct, remodel and/or maintain the [Property] in a habitable condition . . . such that the fungus *Histoplasma capsulatum* was present in the [Claimants'] apartments" and that the "fungus caused them to contract Histoplasmosis, an infection triggered by breathing in spores of a fungus found in bird and bat droppings." DN 1-2 at 3-4. They also allege a cause of action for negligence against Good Karma Holdings and Alltrade, arising out of bodily injuries sustained from contracting histoplasmosis. DN 1-2 at 4-5. Although the Policy provides coverage for "bodily injuries" and "personal and advertising injury liability," which undoubtedly require Scottsdale to

fulfill its duty to defend for injuries covered under the insurance agreement, the Claimants' allegations in the Underlying Action fall outside these provisions.

The Claimants seek relief for medical expenses, pain and suffering, and lost wages from injuries caused from contracting histoplasmosis. DN 1-2 at 3-5. According to the Center for Disease Control and Prevention, histoplasmosis is caused by the fungus *Histoplasma capsulatum* and is generally contracted "after breathing in the microscopic fungal spores from the air." *Fungal Diseases: About*, CDC, https://www.cdc.gov/fungal/diseases/histoplasmosis/definition.html (last visited Oct. 30, 2020). The Policy clearly and unambiguously indicates that "[t]his insurance does not apply to [a] bodily injury . . . which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any fungi or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage." DN 1-1 at 37. The Policy also explicitly defines fungi as "any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents, or byproducts produced or released by fungi." DN 1-1 at 37. Thus, histoplasmosis unquestionably falls squarely within the Policy's fungi exclusion and outside the scope of coverage provided.

Good Karma Holdings and Alltrade do not dispute that the Claimants' alleged injury is excepted from the Policy's fungi exclusion. Instead, they rely on other arguments to attempt to convince this Court to deny Scottsdale's motion for judgment on the pleadings. Relying on a Ninth Circuit case and *Sheffer v. Chromalloy Min. & Mineral Div. of Chromalloy Am. Corp.*, 578 S.W.2d 594, 594 (Ky. Ct. App. 1979), Good Karma Holdings and Alltrade contend that Scottsdale's motion cannot be granted because they raised an affirmative defense that created a material issue. DN 24 at 2. Good Karma Holdings fails to articulate how this proposition is applicable to the case

at bar or cite to any insurance cases where the proposition has been applied. Nonetheless, *Sheffer* is distinguishable. *Sheffer* involved an appeal of the Livingston Circuit Court's decision to grant judgment on the pleadings in a mortgage foreclosure action after mortgagors raised the affirmative defense of want of consideration. *Id*. at 594. Although the Kentucky Court of Appeals stated that want of consideration "create[ed] a sufficient defense or material issue" that would not warrant judgment on the pleadings, it affirmed the lower court's judgment after finding that the answer did not mention failure of consideration as a defense. *Id*. at 595-96.

Here, neither Good Karma Holdings nor Alltrade raised the affirmative defense of want of consideration. Instead, they pled the affirmative defenses of waiver, estoppel and Scottsdale's failure to abide by the terms of the Policy. DN 8 at 2, 12 at 2. These defenses do not create a "sufficient defense or material issue" of whether the allegations in the Underlying Action for injuries resulting from histoplasmosis displace the Policy's unambiguous fungi exclusion, which abrogates Scottsdale's duty to defend. The defenses of waiver and estoppel cannot create coverage under the Policy when it does not exist. *See Eckstein v. Cincinnati Ins. Co*., 469 F. Supp.2d 444, 453 (W.D. Ky. 2007) ("Under Kentucky law, a contract of insurance cannot be created or enlarged by estoppel or waiver"). The same can be said about Scottsdale's alleged failure to abide by the terms of the Policy because Good Karma Holdings and Alltrade have not articulated how Scottsdale acted in bad faith or identified any Policy provisions that Scottsdale breached. *See US HF Cellular Communs., LLC v. Scottsdale Ins. Co*., 776 F. App'x 275, 290 (6th Cir. 2019) ("[T]here can be no action for breach of the implied covenant of good faith and fair dealing if there is no duty to defend").

Good Karma Holdings and Alltrade also do not explain how their denial of certain factual allegations, such as failing to maintain the apartment in a habitable condition so that *Histoplasma*

12

*capsulatum* would be present or that the Claimants suffered injury from contracting histoplasmosis, relate to the issue of whether Scottsdale has a duty to defend. Instead, Good Karma Holdings and Alltrade ask this Court to deny Scottsdale's motion because they obtained an expert opinion that the Complainants' injuries "were not caused by their inhalation of spores of fungi in bird and bat droppings." DN 24 at 5. This Court is not required to wait until "it may be established that liability is not in fact covered," as Good Karma Holdings and Alltrade contend; instead, we have the ability to rule on Scottsdale's duty to defend considering the present motion because the Policy provides a clear and explicit exclusion that abrogates any potential coverage in the Underlying Action related to the alleged damages caused by inhaling spores of fungi.

Further, Good Karma Holdings' discussion of the duty to defend under Kentucky law fails to address how the Policy's language or exclusions are ambiguous or otherwise should be interpreted in their favor. The Policy clearly and unambiguously provides for a fungi exclusion for "bodily injuries" or "personal and advertising injury liability." DN 1-1 at 34. There is also no question that the average policyholder would be able to read and understand that their coverage does not extend to these claims considering the words plain and ordinary meaning, along with the manner in which the technical terms are defined. Although Scottsdale has a duty to defend when an allegation potentially comes within the Policy's coverage, it does not have such a duty where an exclusion explicitly revokes coverage. *See Kemper Nat. Ins. Cos.*, 82 S.W.3d at 873-74.

Accordingly, the Claimants' allegations the in the Underlying Action are not within the scope of the Policy's coverage considering the clearly delineated fungi exclusion and the Court will grant Scottsdale's motion for judgment on the pleadings.

### C. Duty to Indemnify

Based on the claim that it has no duty to defend, Scottsdale contends that it cannot have a duty to indemnify Good Karma Holdings or Alltrade. DN 1 at 7, 8. Notably absent from Good Karma Holding's response is any substantive discussion about Scottsdale's duty to indemnify. DN 24 at 3-4. Nonetheless, Scottsdale has a duty to indemnify if the factual allegations are within the policy's coverage.

"The duty to indemnify is narrower than the duty to defend because it only arises when there is an actual basis for the insured's liability to a third party." *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 269 (6th Cir. 2010). If there is no duty to defend, then there is no duty to indemnify because the duty to defend is broader. *Nautilus Ins. Co. v. Structure Builders & Riggers Mach. Moving Div., LLC,* 784 F. Supp. 2d 767, 771 (E.D. Ky. 2011) (internal citation and quotation marks omitted)).

Here, we previously concluded that Scottsdale does not have a duty to defend because the Policy clearly and unambiguously contains a fungi exclusion that abrogates the possibility of coverage in the Underlying Action and Good Karma Holding's affirmative defenses do not create a "sufficient defense" that would prevent this Court from ruling on Scottsdale's motion for judgment on the pleadings. Having decided that there is no duty to defend, there is necessarily no duty to indemnify. Thus, Scottsdale's motion for judgment on the pleadings seeking a declaration that it has no duty to indemnify is granted.

## V. CONCLUSION

For the reasons discussed herein, Scottsdale's motion for judgment on the pleadings is granted. The Court will enter an order in accordance with this opinion.

November 12, 2020



Charles R. Simpson III, Senior Judge
United States District Court